UNITED STATES, Appellee

v

JAMES J. GREENE, Aviation Structural Mechanic (Hydraulic)
Third Class, U. S. Navy, Appellant

20 USCMA 297, 43 CMR 137

No. 23,166

January 29, 1971

*Lieutenant T. A. Gilliam*, JAGC, USN, argued the cause for Appellant, Accused. With him on the brief were *Commander E. M. Fulton, Jr.,* JAGC, USN, and *Lieutenant Kenneth F. Ripple*, JAGC, USNR.

*Lieutenant Thomas J. Donegan, Jr.,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles J. Keever*, USMC.

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted by general court-martial, convened at Luzon, Republic of the Philippines, of one specification each of willful damage to military property of the United States by burning and simple arson, in violation of Articles 108 and 126, Uniform Code of Military Justice, 10 USC §§ 908 and 926, respectively. The *res* of the two specifications was the same— an SP-2H aircraft, located at the Naval Air Station, Whidbey Island, Washington. Since the charges and specifications were multiplicious for purpose of sentencing, the law officer, following the return of findings by the court, dismissed that which alleged damage to Government property. The accused's sentence, as his petition reaches this Court, extends to a bad-conduct discharge, confinement at hard labor for two years, forfeiture of $109-.00 per month for a like period, and reduction to the grade of E–1. We granted review on the following questions:

1. Whether the law officer erred to the prejudice of the accused by failing to instruct the court-martial on the effect of intoxication upon the element of willfulness and maliciousness involved in simple arson.

2. Whether the law officer cor-

**297**

rectly advised the accused of his right to counsel pursuant to Article 38(b), Uniform Code of Military Justice, 10 USC § 838.

Government counsel concede that voluntary intoxication not amounting to legal insanity may constitute a defense to a crime requiring a *specific intent*. United States v Ferguson, 17 USCMA 441, 38 CMR 239 (1968); paragraph 154a(3), Manual for Courts-Martial, United States, 1969 (Revised edition). If raised by the evidence, the issue of voluntary intoxication on the specific intent element of the offense would be one to be decided by the triers of fact. United States v Lewis, 14 USCMA 79, 33 CMR 291 (1963). As stated in their brief, "the sole issue before this Honorable Court in this case is whether simple arson, as defined by the Code, is a specific intent offense by virtue of the requirement that the burning be 'willful and malicious.' " Since simple arson requires only a *general* criminal intent, they argue, there was no need for the law officer to instruct on the effect thereon of the accused's intoxication.

Defense counsel assert, in their brief, that " 'willfully and maliciously' as used in Article 126(b) means intentionally setting a fire or burning with the specific purpose or premeditation to burn the property of another, without just cause or excuse. . . . Thus it is contended that simple arson requires the specific intent to burn."

Article 126(b), Code, supra, defines simple arson as follows:

"(b) Any person subject to this chapter who *willfully and maliciously* burns or sets fire to the property of another, except as provided in subsection (a) [aggravated arson], is guilty of simple arson and shall be punished as a court-martial may direct." [Emphasis supplied.]

In the discussion of simple arson, the Manual, supra, 1969 (Revised edition), provides:

"b. SIMPLE ARSON

"*Discussion.* Simple arson is the willful and malicious burning or set-

ting fire to the property of another under circumstances not amounting to aggravated arson.

"The offense includes burning or setting fire to real or personal property of someone other than the offender and, as in aggravated arson, it must be shown that the accused set the fire willfully and maliciously.

"*Proof.* (a) That the accused burned or set fire to certain property of another, as alleged; (b) that the property was of the value alleged, or of some value; and (c) that the act was willful and malicious."

Military law, previous to the Uniform Code, defined arson in common-law terms. United States v Duke, 16 USCMA 460, 37 CMR 80 (1966). Winthrop, in his Military Law and Precedents, 2d ed, 1920 Reprint, page 681, states with regard to arson:

"The intent. The burning must be *malicious,* that is to say committed with a criminal or felonious intent."

In United States v Krosky, 418 F2d 65, 67 (CA 6th Cir) (1969), the court defined "willfully" as follows:

"An act is done 'willfully' if done voluntarily and purposely with the *specific intent* to do that which the law forbids; that is to say, with bad purpose either to disobey or to disregard the law. Willfulness includes an evil motive. James v United States, 366 US 213, 81 S Ct 1052, 6 L Ed 2d 246 (1961)." [Emphasis supplied.]

Of particular importance to the question before us is our holding in United States v Groves, 2 USCMA 541, 10 CMR 39 (1953). Groves was charged, among other offenses, with "willfully damaging military property" under Article 108, Code, supra. The record was replete with evidence that Groves was deeply intoxicated at the time of the commission of the charged offense. Finding that specific intent was an element of the offense of *willful* damage to military property, we reversed his conviction for that offense because the law officer gave no instruction to the

court as to the possible legal effect of intoxication upon Groves' ability to entertain a specific intent.

This accused, too, was charged with "willfully damaging, by setting fire to, an SP-2H aircraft . . . military property of the United States," in violation of Article 108, Code, supra. His conviction thereunder was, as noted above, set aside by the law officer because this offense merged with that which alleged the act of simple arson with relation to the same aircraft. In each instance, the Code requires that the act be done "willfully."

It would be anomalous were we to hold, as we would have to, that an instruction on intoxication would have been necessary had the accused remained convicted of the Article 108 offense (United States v Groves, supra) and to hold to the contrary with regard to the same offense, simply because it was also charged as simple arson, where the element of willfulness is essential for conviction of either offense.

We hold, therefore, that intoxication having been raised by the evidence, it was error, prejudicial to the substantial rights of the accused, for the law officer to fail to instruct on the affirmative defense of intoxication. United States v Groves, supra; United States v Meador, 18 USCMA 91, 39 CMR 91 (1969).

The second granted issue questions whether the law officer correctly advised the accused of his right to counsel, pursuant to Article 38(b), Code, supra. The record reflects that while the law officer advised Greene of his right to retain civilian or military counsel of his own selection, he did not inform him that in the event he made such a selection appointed defense counsel would act as associate counsel if Greene so desired.

In United States v Turner, 20 USCMA 167, 43 CMR 7 (1970), a majority of this Court held that this omission was not error, inasmuch as the total advice and inquiry by the law officer relative to the accused's knowledge and understanding of his entitlement to counsel satisfied the basic objectives of United States v Donohew, 18 USCMA 149, 39 CMR 149 (1969). While I dissented in *Turner* and related cases, I now accept this determination as the law of this Court.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

Arson was not a specific intent offense at common law (see Crow v State, 136 Tenn 333, 189 SW 687 (1916)), and I can find no congressional intent to make it such an offense by statute.

When a special intent is a part of the definition of a military crime, Congress has generally used the words "with intent to" (see, for example, Articles 85, 94, 118, 119, 121, 122, 123, 123a, 124, and 130, Uniform Code of Military Justice).

The Hearings before the House Armed Services Committee on H.R. 2498, 81st Congress, First Session, at page 1233, give the following comment on Article 126:

"This article divides arson into two categories. Subdivision (a) is essentially *common-law arson,* but is enlarged to cover structures other than dwellings, in view of the fact that the essence of the offense is danger to human life. In subdivision (b) the offense is essentially one against the property of someone other than the offender." [Emphasis supplied.]

"Willful" has a variable and uncertain meaning in existing law. For example, this Court has described willful disobedience (Article 90, *Uniform Code of Military Justice*) and the willful destruction of Government property (Article 108) as specific intent crimes (see United States v Simmons, 1 USCMA 691, 5 CMR 119 (1952);

299

United States v Groves, 2 USCMA 541, 10 CMR 39 (1953); but compare United States v Stewart, 19 USCMA 417, 42 CMR 19 (1970)). Nonetheless, as it is commonly defined, "willful" is intended, I believe, only to distinguish acts that are intentionally done from those which are accidental, negligent, or involuntary. See People v Cummings, 29 Misc 2d 545, 216 NYS2d 207 (1961). The word is defined in Black's Law Dictionary, Revised Fourth Edition (1968), as follows:

"Proceeding from a conscious motion of the will; voluntary.

.  .  .  .  .

"Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary."

"Malicious," the other word describing the required state of mind to commit simple arson, is defined by Black's Law Dictionary as follows:

"Characterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse."

Use of this term is not intended to require a specific intent but instead only a general criminal intent. See Tinker v Colwell, 193 US 473, 48 L Ed 754, 24 S Ct 505 (1904). Pertinent to the case at bar is the manner in which the word as used in the California arson statute has been construed:

". . . When related to the crime of arson, the word 'malice' denotes nothing more than a deliberate and intentional firing of a building, or other defined structure, as contrasted with an accidental or unintentional ignition thereof; in short, a fire of incendiary origin." [People v Andrews, 234 Cal App 2d 69, 44 West's Cal Rptr 94, 98 (1965).]

At common law and under statutes that use "malice" and "willfulness" in defining the crime of arson, "a particular intent or malice against a person or thing is not essential; it is sufficient to show that the accused was actuated by a malicious motive and that he set the fire wilfully rather than negligently or accidentally." 5 Am Jur 2d, Arson and Related Offenses, § 11; see also 6 CJS, Arson, § 3.

In my view, the offense here requires only a general criminal intent, and voluntary intoxication not amounting to legal insanity is not a defense to this crime. Since no instruction to the court concerning the effect of intoxication on the elements of willfulness and maliciousness was required, I would affirm the findings and the sentence as approved by the United States Navy Court of Military Review.